**Efrain ESTRADA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–01055–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 17, 1997.

---

**1.** *See J.K. and Susie L. Wadley Research Inst. and Blood Bank v. Morris,* 776 S.W.2d 271, 284 n. 1   (Tex.App.—Dallas 1989, orig. proceeding).

Thomas S. Lewis, Houston, for Appellant.

Keli Pool Roper, Houston, for Appellee.

Before TAFT, FARRIS* and PRICE,** JJ.

## OPINION

FARRIS, Justice (Assigned).

Efrain Estrada, Jr. stands convicted of murder. Estrada was accused of taking part with other members of a Baytown gang, the Pelly Rats, in a drive-by shooting intended to target a rival gang. The Rats fired several shots into a family gathering at a home killing Jose Refugio Torres and wounding others present. A jury found Estrada guilty and assessed his punishment at confinement for life and a fine of $5000.

In his first point of error, Estrada contends the trial court erred in denying his *Batson* motion. In his other five points, Estrada complains of the admission of evidence: (1) extraneous evidence of gang membership, (2) hearsay evidence, (3) his "booking" photograph, (4) bloody photographs, and (5) a videotape which captured the tumult inside the home as the shooting occurred and immediately afterward. We overrule all of Estrada's points, and affirm the judgment. Estrada did not make a prima facie case the challenged peremptory strike was racially motivated, and the trial court did not abuse its discretion in overruling his objections to evidence.

In his first point of error, Estrada contends the trial court erred in denying his *Batson* motion. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We overrule point one because Estrada did not make a prima facie case the State deliberately used peremptory challenges to prevent minorities from sitting on the jury.

---

* The Honorable David F. Farris, former Justice, Court of Appeals for the Second District of Texas at Fort Worth, participating by assignment.

** The Honorable Frank C. Price, former Justice, Court of Appeals for the First District of Texas at Houston, participating by assignment.

■ Estrada complained of the State's peremptory strike of the first member of the panel who was Spanish-surnamed. The State volunteered its reasons for its strike, that the prospective juror was approximately the same age as Estrada and he had joked with the second panel member. Also, the State pointed out it had not struck three Spanish-surnamed members of the panel who served on the jury. The trial court noted the State's acceptance of other Spanish-surnamed jurors and overruled the motion.

■ This Court has twice held the State's acceptance of jurors of a particular race may, in an appropriate case, support an inference race was not the State's motive for striking others of the same race. *Roberts v. State,* 866 S.W.2d 773, 777 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); *Jones v. State,* 845 S.W.2d 419, 422 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Significantly, the victims were of the same race as the stricken panel member. Consequently, this was an appropriate case for a trial judge to infer the State's strike was not racially motivated. Point one is overruled.

■ In his second point, Estrada complains the trial court erred in permitting the State to introduce evidence he belonged to the Pelly Rats. Estrada waived any error because there were several times he did not object to testimony of his involvement with the gang or he objected only on other grounds not raised on appeal. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). Point two is overruled.

In his third point of error, Estrada complains the trial court erred in allowing the State to introduce hearsay testimony. It appears his real complaint is that the trial court overruled his motion for mistrial, because his hearsay objections were sustained and the jury was instructed to disregard the hearsay testimony.[1]

Estrada complains of the testimony of Baytown police officer Tim Pettigrew, who investigated the shooting, relating how Es-

trada and the other Rats became suspects. In his testimony, Pettigrew told of conversations with an informant, Jessica Hurley, who had earlier testified of her involvement with the Pelly Rats in planning the drive-by shooting. Hurley had given a note to Pettigrew, as well as other information, identifying Estrada, Edward Salazar, Albert Blanco, and Enrique Diaz as parties to the offense.

Estrada made a series of objections to Pettigrew's testimony about the information he received from Hurley. The trial court first sustained Estrada's objection to Pettigrew's testimony that the four Rats became suspects after they were named by Hurley, and then instructed the jury not to consider the testimony. The State next drew from Pettigrew's testimony that he had received Hurley's note, already in evidence. The State noted that Pettigrew had then talked with the other three accused Rats, and was able to confirm the information in the note, thereby confirming Estrada's involvement. The trial court sustained Estrada's objection, and instructed the jury not to consider Pettigrew's answer,[2] but overruled Estrada's motion for mistrial.

Finally, the State asked Pettigrew if he was able to confirm the involvement of Blanco, Diaz, and Salazar, after he talked with them. Estrada objected after Pettigrew answered, "Yes, sir; I was." The trial court sustained the objection and instructed the jury to disregard the answer. Estrada moved for mistrial, but his motion was followed by an unrecorded bench discussion and there is no recorded ruling. Estrada contends the hearsay testimony was harmful because it gave the jurors the impression that all three of his companions told Pettigrew that he was involved in the shooting while only Diaz testified.

Estrada cites two cases which address the admission of "backdoor" hearsay. *Schaffer v. State,* 777 S.W.2d 111 (Tex.Crim.App. 1989); *Coots v. State,* 826 S.W.2d 955 (Tex. App.—Houston [1st Dist.] 1992, no pet.). Unlike this case, in both *Schaffer* and *Coots*

---

1. While Estrada moved for mistrial following two sustained hearsay objections, the record does not contain a ruling on the second motion.

2. In his brief, Estrada mistakenly contends the request for an instruction to disregard was denied.

the defendant's hearsay objection was overruled, and the complaint was of evidence admitted against the accused. *Schaffer*, 777 S.W.2d at 113; *Coots*, 826 S.W.2d at 958.

■ Generally, harm from improper testimony is cured by an instruction to disregard, except in extreme cases where it appears the evidence is clearly calculated to inflame the minds of the jurors, and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.1987); *McKay v. State*, 707 S.W.2d 23, 36 (Tex.Crim.App. 1985). Considering the nature of the State's questions and Pettigrew's answers, it appears the hearsay testimony was of a character that could be cured by the instruction to disregard. Additionally, the extent of other evidence involving Estrada in the shooting precludes harm because the testimony to which Estrada objected was cumulative of other testimony of Pettigrew, Hurley, and Diaz.

Pettigrew testified, without objection, that he immediately suspected the Pelly Rats were involved in the drive-by shooting and, in the course of interviewing members of the gang, Estrada became a suspect. His investigation led him to Hurley, who gave Pettigrew the note identifying the guilty gang members. Hurley told Pettigrew of her involvement: in planning the drive-by at a Pelly Rats' party at the Palms Motel, as a party to a first drive-by during which no shots were fired, going with the four Rats to Estrada's home to get guns, and being left at Estrada's home by the Rats who drove away with Estrada's guns. Hurley and Diaz testified of the plans made at the Palms Motel, the first drive-by, picking up the guns, and leaving Hurley at Estrada's home.

Diaz described the shooting and identified the rifle which he saw Estrada fire two or three times from the car's right front window. Pettigrew identified the guns, including the rifle fired by Estrada, as those he had recovered from the Diaz home after being led there by Salazar. The testimony of Pettigrew and the Pasadena Regional Crime Laboratory Firearms Examiner identified the bullet which killed Torres as one fired from the rifle Estrada used in the shooting. These are not the facts of an extreme case where an instruction would not have cured any error. Point three is overruled.

■ In point four, Estrada contends the trial court erred in admitting State's exhibit 18, separate photographs of the four Rats, which Estrada describes as portraying him with a police booking number. The trial court sustained Estrada's objection to police captions on the photographs and ordered them deleted but overruled his objection to numbers which appear vertically on the left side of each photograph. The photographs do not include booking numbers; rather, they show Estrada and the other Rats standing next to a scale measuring their approximate height in feet and inches.

Estrada argues State's exhibit 18 was prejudicial because it supported other evidence portraying him as a gang leader for whom violent acts were routine. In support of his argument, Estrada cites *Ecby v. State*, which is easily distinguished. 840 S.W.2d 761 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Here, the witness who identified exhibit 18 identified four Rats from the photographs and said the pictures showed them as they appeared at the time of the shooting, leading the jurors to logically conclude the pictures were related to the offense at issue and not an extraneous occurrence. *See Davis v. State*, 786 S.W.2d 77, 78 (Tex.App.—Beaumont 1990, pet. ref'd). Point four is overruled.

In points five and six, Estrada complains of the admission of eight photographs and a videotape admitted during the guilt-innocence potion of the trial. He argues the prejudicial impact of the exhibits outweighed their probative value because only the identity of those culpable was at issue. In a supplemental brief, he argues the jury assessed his punishment at life imprisonment even though, when the crime occurred, he was only 17 and had never been convicted of a felony; thus, the photographs and videotape certainly contributed to the trial's outcome.

The most gruesome of the photographs is State's exhibit 11. Torres' body lies on the

blood-covered floor. His eyes stare vacantly. The top of his skull is blown away; his brain lies, in a scramble, on the floor in front of him. The sum of the other photographs and the videotape do not match the horror of State's exhibit 11.

The videotape was a windfall for the State. Before the shooting occurred, those gathered at the home targeted by the Rats were watching and videotaping a televised boxing match. The video camera was pointed at the television screen but recorded the conversation of those watching the fight. The camera also recorded the gunshots, as well as the shouts and screams, and finally the torment of those present.

We overrule points five and six because we find no abuse of discretion in the trial court's determination that the probative value of the photographs and videotape was not substantially outweighed by the danger of *unfair* prejudice. TEX.R.CRIM.EVID. 403; *Long v. State*, 823 S.W.2d 259, 273 (Tex. Crim.App.1991). The photographs, particularly the one of Torres described previously, and the videotape are extremely prejudicial. They are not *unfairly* prejudicial, however. The probative value of these exhibits stems from their being the most accurate way possible to portray the result of Estrada's crime and the immediate effect it had on the victims. That is, these exhibits are the most exact method of conveying the true nature of the crime.

As to Estrada's complaint the exhibits contributed to the assessed punishment, it is fitting for a jury to be outraged by the foreseeable consequences of outrageous conduct. Therefore, the trial court did not commit error by admitting the exhibits. *Compare Emery v. State*, 881 S.W.2d 702, 710–11 (Tex.Crim.App.1994); *Hicks v. State*, 860 S.W.2d 419, 426 (Tex.Crim.App.1993).

The judgment is affirmed.